## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LASHAWN SMITH**

**VERSUS**

**TIMOTHY HOOPER, WARDEN**

**CIVIL ACTION**

**NO. 24-0068**

**SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record,[1] the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[2]

I.   **Factual Background**

The petitioner, Lashawn Smith ("Smith"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. On February 16, 2011, Smith was charged in Terrebonne Parish with second degree murder in violation of La. Rev. Stat. § 14:30.1.[3] Smith entered a plea of not guilty in the case.[4]

---

[1] The State Court Record was electronically filed by the State at Rec. Doc. 17 at parts 17 through 17-1.

[2] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the 14:64.3 claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[3] Rec. Doc. 17 at 1089, Bill of Indictment, 2/16/11.

[4] Rec. Doc. 17 at 874, Minute Entry, 2/22/11.

The record reflects[5] that the victim, Quincy Smith, and LaShawn Smith were cousins. Quincy Smith owed either LaShawn Smith or someone else $9,000 for the purchase of drugs. Around midnight on December 31, 2010, LaShawn Smith drove Quincy Smith to a wooded area in Smithridge. Quincy Smith was fatally shot in the head by either LaShawn Smith or someone else. Quincy Smith was later reported missing. Quincy Smith's body was found on January 7, 2011. Detective Terry Daigre and Detective Charles Clark with the Terrebonne Parish Sheriff's Office interviewed LaShawn Smith later that day. LaShawn Smith told the detectives that he was alone with his cousin and shot him. Evidence indicated that Quincy Smith's body was moved from the woods to the back of a house on Anacin Street.

Two weeks later, Detective Michael Garner interviewed LaShawn Smith. At that time, LaShawn Smith claimed that he drove his cousin to the Smithridge to meet some people. According to LaShawn Smith, "Rodney" told Quincy Smith that "Darnell" wanted the $9,000 that he owed him. Quincy Smith allegedly told Rodney that he did not have the money. "Cory" gave LaShawn Smith a gun and told him to shoot Quincy Smith. LaShawn Smith told Detective Garner several versions of what then transpired. In one version, LaShawn Smith said he could not shoot his cousin so Cory grabbed the gun from him and shot Quincy Smith. In a second version, Cory produced a second gun and shot Quincy Smith. In a third version, LaShawn Smith was alone with Quincy Smith and he shot Quincy Smith with a revolver and then threw the weapon into the intracoastal waterway.

On December 9 through 12, 2014, LaShawn Smith was tried by a jury, and was found guilty of the lesser included offense of manslaughter.[6] The State filed a multiple bill charging

---

[5] The facts were taken from the opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Smith,* 2016 KA 1284, 2017 WL 1378237, at *1 (La. App. 1st Cir. Apr. 12, 2017); Rec. Doc. 17 at 902-03, La. App. 1st Cir. Opinion, 2016 KA 1284, 4/12/17.

[6] Rec. Doc. 17 at 884-87, Trial Minutes, 12/9/14; *id.* at 888-89, Trial Minutes, 12/10/14; *id.* at 890-91, Trial

Smith as a fourth felony offender.[7]  On August 11, 2015, the Trial Court denied Smith's motion

for new trial and motion for post verdict judgment of acquittal.[8]  On that same date, the Trial Court

adjudicated Smith a fourth felony offender and sentenced Hayes to fifty years at hard labor without

the benefit of probation or suspension of sentence, to be served consecutively to any other sentence

Smith was serving.[9]  Both Smith and the State filed motions to reconsider the sentence.[10]  The

Trial Court granted the State's motion to reconsider the sentence and resentenced Smith on May

18, 2016 to life imprisonment at hard labor to be served without the benefit of probation, parole,

or suspension of sentence.[11]  The Trial Court denied Smith's motion for reconsideration of

sentence.[12]

On direct appeal, Smith's appellate counsel filed a brief raising the following claims: (1)

the Trial Court erred in denying his motion for new trial when the State violated *Brady* in failing

to disclose its theory that other people may have been involved in the killing; (2) his life sentence

is excessive; and (3) the Trial Court erred in denying his motion to suppress his inculpatory

statement.[13]

---

Minutes, 12/11/14; *id.* at 892-93, Trial Minutes, 12/12/14; *id.* at 617-18, Verdict, 12/12/14; *id.* at 736-803, Partial Trial Transcript, 12/11/14.

[7] Rec. Doc. 17 at 1386-87, Information for Habitual Offender, 1/21/15.

[8] Rec. Doc. 17 at 682, Habitual Offender Hearing & Sentencing Minutes, 8/11/15; *id.* at 648-52, Motion for New Trial, 3/17/15; *id.* at 823-57, Habitual Offender Hearing & Sentencing Transcript, 8/11/15.

[9] Rec. Doc. 17 at 662-64, Reasons for Sentence, 8/11/15; *id.* at 682, Habitual Offender Hearing & Sentencing Minutes, 8/11/15; *id.* at 823-57, Habitual Offender Hearing & Sentencing Transcript, 8/11/15.

[10] Rec. Doc. 17 at 678-79, Motion to Reconsider Sentence & Order to Show Cause, 8/19/15; *id.* at Motion to Reconsider Sentence, 712-14, 5/25/16.

[11] Rec. Doc. 17 at 705, Order on Motion to Reconsider Sentence, 5/2/16; *id.* at 709, Resentencing Minutes, 5/18/16; *id.* at 720, Order, 6/16/16.

[12] Rec. Doc. 17 at 712-14, Motion for Reconsideration of Sentence, 5/25/16; *id.* at 709, Resentencing Minutes, 5/18/16.

[13] Rec. Doc. 17 at 930-55, Appellate Brief, 2016 KA 1284, 10/24/16.

On April 12, 2017, the Louisiana First Circuit affirmed Smith's conviction and sentence finding that there was no violation of *Brady*.[14]  The court also found that Smith's sentence was not unconstitutionally excessive.[15]  Finally, the court found that there was no error or abuse of discretion in denying the motion to suppress Smith's statement.[16]

Smith did not seek review of that decision by the Louisiana Supreme Court.  Smith's conviction became final on May 12, 2017, when the time for filing a petition for a writ application to the Louisiana Supreme Court expired.  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process).

On July 8, 2019, Smith filed a *pro se* application for post-conviction relief asserting the following claims for relief: (1) the Trial Court lacked jurisdiction because he was not arraigned; (2) the verdict was infirm because it was a nonunanimous verdict; (3) the habitual offender proceedings were flawed because he was not first sentenced for manslaughter and there was no determination that his predicate convictions were constitutionally valid; and (4) ineffective assistance of counsel.[17]

The State filed a response claiming that Smith's application for post-conviction relief was untimely.[18]  Smith filed a traverse claiming that he did not receive notice of the Louisiana First

---

[14] *State v Smith*, 2017 WL 1378237, at *2-5 (La. App. 1st Cir. Apr. 12, 2017); Rec. Doc. 17 at 903-10, La. App. 1st Cir. Opinion, 2016 KA 1284, 4/12/17.

[15] *Id.* at *5-8; Rec. Doc. 17 at 910-14, La. App. 1st Cir. Opinion, 2016 KA 1284, 4/12/17.

[16] *Id.* at *8-10; Rec. Doc. 17 at 915-18, La. App. 1st Cir. Opinion, 2016 KA 1284, 4/12/17.

[17] Rec. Doc. 17 at 962-79, Application for Post-Conviction Relief, 7/10/19 (signed 7/8/19).
[18] Rec. Doc. 17 at 998-1000, State's Response to Petitioner's Application for Post Conviction Relief, 8/7/19.

Circuit's April 12, 2017 opinion on direct appeal until January 21, 2019.[19]  The State filed a response related to the merits of Smith's claims on November 18, 2019.[20]  On November 2019, the Trial Court denied relief as to the first three claims in Smith's application for post-conviction relief, finding: (1) Smith was arraigned and entered a not guilty plea, and he was arraigned on the habitual offender bill, tendered a not guilty plea and stated he understood his rights; (2) the verdict was unanimous; and (3) the constitutionality of each predicate conviction was established and the appellate court affirmed the habitual offender adjudication and sentence on appeal.[21]  The Trial Court granted an evidentiary hearing on claim four to the extent that Smith alleged ineffective assistance of counsel in failing to investigate and file pretrial and post-trial motions, failing to present testimony of an alibi witness, and failing to object to the constitutionality of the predicate convictions.[22]

Smith filed a motion requesting leave to supplement or amend to include a claim that his sentence is excessive and that the failure to apply Act 282 retroactively to his case violated equal protection.[23]  On December 4, 2019, the Trial Court granted Smith's motion to amend.[24]  The State filed a response to Smith's supplemental claim.[25]

---

[19] Rec. Doc. 17 at 1002-1012, Motion to Reconsider Previously Ruling on Application for Post-Conviction Relief, 9/18/19 (signed 9/9/19).

[20] Rec. Doc. 17 at 1017-21, State's Response to Petitioner's Application for Post Conviction Relief, 11/18/19.

[21] Rec. Doc. 17 at 1093, Order Granting Evidentiary Hearing on PCR Claim 4, 11/12/19.

[22] Id. at 1093-94.

[23] Rec. Doc. 17 at 1023-30, Motion Requesting Permission for Leave to Supplement and/or Amend Motion to Correct Illegal Sentence, 12/10/19 (signed 11/13/19).

[24] Rec. Doc. 17 at 1022, Order Granting Leave to Supplement and/or Amend Post-Conviction Relief Petition, 12/4/19.

[25] Rec. Doc. 17 at 1102-06, State's Response to Petitioner's Supplemental Application for Post-Conviction

On March 23, 2022, the Trial Court held an evidentiary hearing on Smith's claims of ineffective assistance of counsel.[26]  After hearing testimony and the arguments of the parties, the Trial Court denied relief as to Smith's claims of ineffective assistance of counsel.[27]

On August 29, 2022, the Louisiana First Circuit denied Smith's related writ application finding, "[i]f the substantive claim has no merit, then the contention that counsel is ineffective for failing to raise the issue also has no merit.  *See State ex rel. Roper v. Cain*, 99-2173 (La. App. 1st Cir. Nov. 26, 1999), 763 So.2d 1, 5 (*per curiam*), *writ denied*, 2000-0975 (La. 11/17/00), 773 So.2d 733."[28]  On April 25, 2023, the Louisiana Supreme Court denied Smith's related writ application finding that he failed to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that, as to his other claims, he failed to satisfy his post-conviction burden of proof under La. Code Crim. P. art. 930.2.[29]

In the interim, in September 2022, Smith filed a motion for the court to take judicial notice that the habitual offender statute is unconstitutional.[30]  The Trial Court held a hearing on November 9, 2022 and denied the motion.[31]  On March 13, 2023, the Louisiana First Circuit Court of Appeal

---

Relief, 7/7/21.

[26] Rec. Doc. 17 at 1185-1233, Post-Conviction Hearing Transcript, 3/23/22.

[27] *Id.* at 1230-31.

[28] *State v. Smith*, No. 2022 KW 0560, 2022 WL 3812398 (La. App. 1st Cir. Aug. 29, 2022); Rec. Doc. 17 at 1241, La. App. 1st Cir. Order, 2022 KW 0560, 8/29/22.

[29] *State v. Smith*, 359 So. 3d 955 (La. 2023); Rec. Doc. 17 at 1521-22, La. S. Ct. Order, 2022-KH-1541, 4/25/23.

[30] Rec. Doc. 17 at 1245, Motion for Court to Take Notice of Law Pursuant to C.E. Art. 202 (A), (B), and (E), Question for Court, 10/14/22 (signed 9/26/22).

[31] Rec. Doc. 17 at 1515-20, Hearing Transcript, 11/9/22.

denied Smith's related writ application on the showing made.[32]    On December 5, 2023, the Louisiana Supreme Court denied relief finding that Smith had previously exhausted his right to collateral review.[33]

On November 29, 2022, Smith filed a second or subsequent application for post-conviction relief under the guise of factual innocence, but rather than raising new evidence of his innocence, Smith claimed that the verdict was unconstitutional because the verdict was nonunanimous.[34]    On December 7, 2022, the Trial Court ordered Smith to show cause why his application should not be dismissed.[35]    In response to an order to show cause, he filed a memorandum.[36]    On January 12, 2023, the Trial Court found that Smith failed to present any new evidence of any type as required by La. Code Crim. P. art. 926.2, and denied relief.[37]

On June 2, 2023, the Louisiana First Circuit Court of Appeal denied Smith's related writ application finding he "failed to point to any new, reliable, and noncumulative evidence to substantiate his claim of factual innocence.  *See* La. Code Crim. P. art. 926.2 (B)," and therefore

---

[32] *State v. Smith*, No. 2022 KW 1377, 2023 WL 2481172 (La. App. 1st Cir. Mar. 13, 2023); Rec. Doc. 17 at 1513, La. App. 1st Cir. Order, 2022 KW 1377, 4/13/23; Rec. Doc. 17-1 at 17-119 , Writ Application, 2022-KW-1377, 12/16/22.

[33] *State v. Smith*, 373 So. 3d 716 (La. 2023); Rec. Doc. 17-1 at 294, La. S. Ct. Order, No. 2023-KH-00533, 12/5/23; Rec. Doc. 17-1 at 1-16, Writ Application, 2023-KH-00533, 4/12/23; *id.* at 120-28, Supplement to Writ Application, 23-KH-0533, 4/17/23 (signed 4/14/23).

[34] Rec. Doc. 17 at 1378-1393, Second of Subsequent Uniform Application for Postconviction Relief, 12/2/22 (signed 11/29/22); Rec. Doc. 17 at 1280-1377, Application for Post-Conviction Relief Pursuant to Louisiana Legislative Act Factual Innocence According Louisiana Code of Criminal Procedure Article 926.2, Section 4 Nontestimonial Documentary Evidence, 12/2/22; *id.* at 1404-32, Application for Post-Conviction Relief Pursuant to Louisiana Legislative Act Factual Innocence According Louisiana Code of Criminal Procedure Article 926.2, Section 4 Nontestimonial Documentary Evidence, 12/16/22

[35] Rec. Doc. 17 at 1382, Judgment, 12/7/22.

[36] Rec. Doc. 17 at 1449-55, Order to Show Cause Why Applicant Application for Post Conviction Relief Pursue to Act 104 Should Not Be Dismissed under La. C. Cr. P. Art. 928 by Honorable Randall L Bethancourt, 1/4/23.

[37] Rec. Doc. 17 at 1446-47, Order Denying Post-Conviction Relief, 1/12/23; *id.* at 1456, Order, 1/12/23.

the state district court did not abuse its discretion in denying the application for post-conviction relief.[38]    On December 5, 2023, the Louisiana Supreme Court denied Smith's related writ application without stated reasons.[39]

## II.    **Federal Habeas Petition**

On January 4, 2024, Smith filed his original petition for federal habeas corpus.[40]   Smith appears to challenge the constitutionality of Louisiana's habitual offender statute.   While his enumerated claims are difficult to decipher, he appears to allege: (1) the State failed to specify "which year of the statute" on which it was relying;[41] (2) the state courts failed to "give specific avement [sic]"[42] for denying relief; and (3) he was subject to an *ex post facto* sentencing enhancement.

The State filed a response claiming that Smith's petition is untimely.[43]   In the alternative, the State argues that Smith failed to exhaust his claims and that they are procedurally barred.   The State further argues that there was no *ex post facto* violation and that the state district court's ruling dismissing the claims was not an unreasonable application of clearly established Supreme Court law.

---

[38]*State v. Smith*, No. 2023 KW 0255, 2023 WL 3868022 (La. App. 1st Cir. June 2, 2023); Rec. Doc. 17 at 1523, La. App. 1st Cir. Order, 2023 KW 0255, 6/2/23.

[39] *State v. Smith*, 373 So. 3d 977 (La. 2023); Rec. Doc. 17-1 at 295, La. S. Ct. Order, No. 2023-KH-01090, 12/5/23; *id.* at 215-93, Writ Application, 23-KH-01090, 6/21/23.

[40] Rec. Doc. 4.

[41] Rec. Doc. 4-1 at 5.

[42] *Id.* at 6.
[43] Rec. Doc. 16.

Smith did not file a traverse. However, in his petition, Smith claims that he filed his habeas within one year of the date on which the factual predicate of his claims was discovered through the exercise of due diligence.[44]

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[45] applies to this petition, which was filed in this Court under the mailbox rule on January 4, 2024.[46]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Smith's federal petition was not timely filed under the AEDPA.  For the following reasons, Smith's petition should be dismissed as time-barred.

## IV.   Statute of Limitations

---

[44] Rec. Doc. 4 at 15.

[45] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[46] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Smith signed his pleadings on January 4, 2024, which is the earliest date Smith could have given his petition to prison officials for mailing.

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date the state court conviction became final or one year.[47]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  In addition to the one-year period that runs from finality, Section 2244 recognizes that a new one-year period may run from the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(D).  The statute also provides two other triggering events that do not apply here.  For purposes of § 2244(d)(1)(B), Smith does not assert that he was subject to state action that impeded him from filing his federal petition in a timely manner.  Further, Smith's claims are not based on a constitutional right that has been newly recognized by the Supreme Court and made retroactive to cases on collateral review for purposes of § 2244(d)(1)(C).

The State argues that Subsection A applies in this case.  Pursuant to § 2244(d)(1)(A), the court must consider whether Smith filed his federal petition within one year of the finality of his

---

[47] The statute of limitations provision of the AEDPA provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

conviction.  As state above, Smith's conviction was final under federal law on May 12, 2017, when his time to file a timely petition for writ with the Louisiana Supreme Court expired.  Pursuant to § 2244, Smith had one year from that date, or until May 14, 2018, to timely file a federal petition for habeas corpus relief, which he did not do.[48]  Thus, literal application of the statute would bar Smith's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

> A.    **<u>Statutory Tolling under Subsection A</u>**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state court pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above with the exception of when Smith was represented by counsel.

---

[48] Because the 365th day of the limitations period fell on a Saturday, Smith's deadline was extended through the following Monday, May 14, 2018.  *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ. P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' " *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Smith's case, the AEDPA filing period began to run on May 13, 2017, the day after his conviction was final under federal law, and continued for one year without interruption through May 14, 2018 when it expired.  During that period, Smith had no properly filed state post-conviction or other collateral review pending in any state court to interrupt the running of the AEDPA one-year filing period.

Smith did not first file for post-conviction relief until July 8, 2019.  Thus, Smith allowed another 419 days to pass after the expiration of the AEDPA limitations period before he filed for post-conviction relief.  Even after his first application for post-conviction relief was fully adjudicated on April 25, 2023, Smith waited another seven months to submit his federal petition.

Although Smith filed for state post-conviction relief on multiple occasions after the AEDPA limitations period expired, the applications and motions filed after the AEDPA limitations period expired do not afford him any tolling benefit.  *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. Jul. 24, 2000) (citing *Williams v. Cain*, No. 00-536, 2000 WL 863132, at *2 (E.D. La. Jun. 27, 2000)), *aff'd*, 253 F.3d 702 (5th Cir. 2001).  Further, the filing of a state petition after the AEDPA filing period has expired does not restart the AEDPA time-clock.  *See Scott*, 227 F.3d at 263 (a filing made after expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

The AEDPA limitations period therefore expired on May 14, 2018, long before Smith filed his federal petition on January 4, 2024.  Simply put, once the federal limitations period expired, "[t]here was nothing to toll."  *Butler*, 533 F.3d at 318.

Therefore, Smith's federal petition, filed under the mailbox rule on January 4, 2024, was filed more than five years after the AEDPA filing period expired on May 14, 2018.  His untimely federal petition should be dismissed with prejudice unless he meets another exception or excuse to the running of the AEDPA limitations period.

**B.  Statutory Tolling under Subsection D**

As indicated, Smith claims that he filed his habeas within one year of the date on which the factual predicate of his claims was discovered through the exercise of due diligence.[49]

Under § 2244(d)(1)(D), the AEDPA limitations period commences upon the discovery of the factual predicate of the claim when the factual predicate could not have been discovered earlier through the exercise of due diligence. This subsection does not delay the commencement of the limitations period until the date on which the factual predicate of a claim was in fact discovered or developed; rather, it delays it only until the date on which it "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see Manning*, 688 F.3d at 189-90 (argument that § 2244(d)(1)(D) runs from actual discovery of claim is an "untenable theory."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("... the time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner ... [and] not when the prisoner recognizes their legal significance."). The United States Fifth Circuit has held "that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)); *see also Hunter v. Cain*, 478 F. App'x 852 (5th Cir. 2012) (citing *Starns v. Andrews*, 524 F.3d 612, 620-21 & n. 5 (5th Cir. 2008) (holding that the relevant date under § 2244(d)(1)(D) is the date that the habeas petitioner or his criminal attorney received the information in question)).

Smith does not indicate when he allegedly discovered the factual predicate for his claims. Further, Smith has failed to reference or present any evidence of diligence in discovering the factual basis for his claims. In any event, Smith was present at his resentencing on May 18, 2016

---

[49] Rec. Doc. 4 at 15.

and would have known at that time that the State did not specify which version of the habitual offender statute on which it was relying.

To the extent that Smith relies on the amendment of La. Rev. Stat. art. 15:5291 by Act 282, which had an effective date of November 1, 2017, he fares no better. The record demonstrates that Smith was aware of Act 282 by November 13, 2019, as he referenced the Act in his motion to amend his first application for post-conviction relief.[50] Nonetheless, under Subsection D, the limitations period would run not from the date on which Smith in fact learned of Act 282, but rather from the date on which he *could have learned of it through the exercise of due diligence*. Certainly, the 2017 amendment of the habitual offender statute by Act 282 was discoverable through the exercise of due diligence long before November 2019. Ultimately, Smith's actual knowledge of the legal significance of events, if any, is not relevant. *See Fisher*, 174 F.3d at 714.

For these reasons, Smith has not met his burden to establish that Subsection D applies in this case and that his federal application would be timely under that provision. In the absence of that showing, Subsection A controls, and, for the reasons already explained, his federal application was filed more than five years too late under that subsection.

**C.    No Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling of the AEDPA limitations period where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).

---

[50] Rec. Doc. 17 at 1024-28, Motion Requesting Permission for Leave to Supplement and/or Amend Motion to Correct Illegal Sentence, 12/10/19 (signed 11/13/29).

However, equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

A habeas petitioner bears the burden of proof to establish entitlement to equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Smith does not directly address equitable tolling in his petition. In explaining why he did not raise his second claim for relief on direct appeal, he states that he "had to file post-conviction relief because under Local Rule 6 Federal Civil Rule 36(B) notice Petitioner never received a notice."[51] The record demonstrates that Smith, in seeking to excuse the untimeliness of his original post-conviction application, asserted that he did not receive notice of the Louisiana First Circuit's April 12, 2017 opinion on direct appeal until January 21, 2019.[52] However, the purpose of the federal equitable tolling doctrine relates to the suspension of the federal limitations period under the AEDPA, not state law filing deadlines for state court pleadings. *See Pace*, 544 U.S. at 419; *Davis*, 158 F.3d at 811. Nevertheless, to the extent that Smith's pleas to excuse his tardiness in his original state court filing similarly led to his tardiness in federal court, he has not established a basis for granting the extraordinary remedy of equitable tolling of the AEDPA's one-year filing period.

As indicated, Smith claims that he did not receive notice of the disposition of his direct appeal until his appellate counsel's January 21, 2019 letter, after the AEDPA limitations period had run. An appellate counsel's failure to forward a copy of the appellate decision to the prisoner can constitute an extraordinary circumstance that stood in a petitioner's way and prevented a timely filing. *Nalls v. Vannoy*, 797 F. App'x 848, 853 (5th Cir. 2020) (appellate counsel's failure to

---

[51] Rec. Doc. 4 at 7.

[52] Rec. Doc. 17 at 1002-11, Motion to Reconsider Previously Ruling on Application for Post-Conviction Relief, 9/18/19 (signed 9/9/19).

forward the appellate decision to petitioner despite petitioner requesting updates on four occasions after the decision was issued and petitioner's mother contacting the attorney constituted an extraordinary circumstances that prevented petitioner from timely filing his petition). Nonetheless, to be entitled to equitable tolling, it is clear that a prisoner must still pursue his rights diligently despite his purported extraordinary circumstances. *Tsolainos v. Cain*, 540 F. App'x 394, 398 (5th Cir. 2013).

Unlike the petitioner in *Nalls*, Smith fails to demonstrate that he was diligent in pursuing his rights both before and after the delay in receiving notice of the disposition of his direct appeal. Initially, Smith presents no evidence demonstrating that he diligently monitored the status of his direct appeal. While Smith's direct appeal was filed in 2016, he has not presented any evidence nor even alleged that he attempted to contact his appellate counsel or the Louisiana First Circuit Court of Appeals about the status of his direct appeal before January 2019. As others in this court have recognized, "while ... incarcerated persons face more obstacles than free citizens in making routine status checks on pending court matters, even prisoners are not absolved of all responsibility to track their litigation diligently." *Smith v. Terrell*, No. 07-9449, 2009 WL 2139697, at *4 (E.D. La. Jul. 13, 2009) (order adopting attached report and recommendation).

Instead, it appears that Smith sat idle without inquiry of the status of his appeal for more than *two years*. This extended time was unreasonable and does not warrant equitable tolling. *See, e.g.*, *Licona v. Vannoy*, No. 19-10502, 2020 WL 4014842, at *1 (E.D. La. Jul. 15, 2020) (petitioner who waited seven months before filing a status check and then another year before filing his second status check was not entitled to equitable tolling), *appeal dismissed*, No. 20-30466, 2021 WL 3232598 (5th Cir. Feb. 18, 2021); *Smith v. Terrell*, No. 07-9449, 2009 WL 2139697, at *4 (E.D.

La. Jul. 13, 2009) (lack of due diligence where petitioner waited a year after his initial inquiry to the Louisiana Supreme Court before again checking on the status of his case); *Gallegos v. United*, No. SA-14-CR-00274-XR(1), SA 17-CV-1171-XR, 2018 WL 3018178, at *3 (W.D. Tex. June 15, 2018) (petitioner not entitled to equitable tolling when he waited over a year to contact the court and never attempted to contact his attorney by phone or in writing to verify whether appeal had been filed or inquire about the status); *Scott v. Dretke*, No. 3:05-CV-0609-H, 2006 WL 1831331, at *3 (N.D. Tex. June 29, 2006) (lack of diligence where prisoner waited ten months to inquire about the status of a filing); *Jones v. Cockrell*, No. Civ. A. 3:01-CV-0521M, 2002 WL 31298863, at *3 (N.D. Tex. Oct. 8, 2002) (lack of diligence where prisoner waited approximately one year to inquire about the status of a filing).

Furthermore, while Smith claims he did not receive notice of the disposition of his appeal until January 2019, according to Smith's appellate counsel, Smith's family was aware of the disposition of Smith's direct appeal by July 12, 2017.[53]  Specifically, appellate counsel stated in the letter, "Once your appeal was denied, on July 12, 2017, I discussed with your family representing you before the Louisiana Supreme Court.  However, your family chose not to retain me for this representation."[54]  Further, Smith's counsel, James Holt, testified at the evidentiary hearing that he had been in contact with Smith's parents and sister and that he sent Smith a copy of the appellate court ruling after it was rendered.[55]

---

[53] Rec. Doc. 17 at 1007, Letter from Appellate Counsel to Smith, 1/21/19.

[54] *Id.*  Counsel further advised in the letter that Smith could designate a family member to pick up the file from his office or could pay $100 to cover the cost of shipping the file to Smith.  *Id.*

[55] Rec. Doc. 17 at 1200-01, Post-Conviction Hearing Transcript, 3/23/22.

Moreover, after allegedly learning in January 2019 of the disposition of his appeal, Smith waited more than five months to file his first application for post-conviction relief.[56]  Even then, Smith did not raise the claims that he raises in his habeas petition.  Rather, he waited an additional three years to file his motion requesting the Trial Court to take judicial notice that the habitual offender statute is unconstitutional.[57]  Finally, Smith continued to show a lack of diligence when he waited thirty-one days to file his habeas petition after the Louisiana Supreme Court denied his related writ application.[58]  *See, e.g.*, *George v. Vannoy*, 6:17-cv-01614, 2018 WL 1698308, at * 3 (W.D. La. Mar. 6 2018) (petitioner's lack of diligence continued when he waited an additional 32 days between learning of the denial of his state writ and the mailing of his federal habeas petition), *report and recommendation adopted*, 2018 WL 1661457 (W.D. La. Apr. 6, 2018).

Lastly, it is well-settled that mistake, ignorance of the law, and a prisoner's *pro se* status and lack of legal training do not constitute rare and exceptional circumstances warranting equitable tolling.  *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *see also Tate v. Parker*, 439 F. App'x 375 (5th Cir. 2011) ("The alleged extraordinary circumstances endured by Tate, such as ignorance of the law, lack of knowledge of filing deadlines, a claim of actual innocence, temporary denial of access to research materials or the law library, and inadequacies in the prison law library, are not sufficient to warrant

---

[56] Rec. Doc. 17 at 962-79, Application for Post-Conviction Relief, 7/10/19 (signed 7/8/19).

[57] Rec. Doc. 17 at 1245, Motion for Court to Take Notice of Law Pursuant to C.E. Art. 202 (A), (B), and (E), Question for Court, 10/14/22 (signed 9/26/22).

[58] *Smith*, 373 So. 3d at 716; Rec. Doc. 17-1 at 294, La. S. Ct. Order, No. 2023-KH-00533, 12/5/23.

equitable tolling"); *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ([E]quitable tolling "is not intended for those who sleep on their rights").

In summary, Smith has failed to establish that he acted with reasonable diligence. Therefore, Smith is not entitled to equitable tolling.

### D. <u>No Other Excuse or Exception to Time Bar</u>

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin*, 569 U.S. at 386. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

The United States Fifth Circuit Court of Appeals has explained:

This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. The standard is seldom met.

An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim

must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

*Floyd v. Vannoy*, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted).

Smith does not invoke *McQuiggin*. Nor does he make the required showing. As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is unavailable in the vast majority of cases, claims of actual innocence are rarely successful," and thus rejected "in virtually every case." *Schlup*, 513 U.S. at 324. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).

To the extent that Smith previously claimed that he gave his trial counsel the name of an alibi witness who could have testified that Smith was by a Taco Bell at the time of the shooting,[59] Smith's trial counsel explained that he could not present alibi witnesses because Smith made statements to law enforcement that he was present at the scene, so counsel instead suggested to the jury that Smith may have been present but was not the shooter.[60] Additionally, while other persons were apparently present at the scene of the shooting, Smith refused to provide defense counsel with information to counsel to locate and subpoena those witnesses.[61] In any event, Smith has not

---

[59] Rec. Doc. 17 at 976, Memorandum in Support of Post-Conviction Relief Application, 7/10/19 (signed 7/8/19); *id.* at 1215, 1218, 1220, Post-Conviction Hearing Transcript, 3/23/22.

[60] Rec. Doc. 17 at 1199-200, 1209, Post-Conviction Hearing Transcript, 3/23/22.

[61] *Id.* at 1192-93, 1210, 1218, 1222.

shown that evidence that he was not present at the shooting and that another person shot the victim was not available before trial.  That is fatal, because evidence that was available to "[a petitioner] or trial counsel at or before trial" does not qualify as "new."  *See Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018); *accord Tyler v. Davis*, 768 F. App'x 264, 265 (5th Cir. 2019); *Uptergrove v. Director, TDCJ-CID*, Civ. Action No. 4:18cv586, 2021 WL 3288296, at *2 (E.D. Tex. Jul. 30, 2021) ("In order for evidence to constitute new evidence that can support a claim of actual innocence and allow a petitioner to overcome the limitations period, it must have been unknown to counsel and *not discoverable with reasonable investigation.*" (emphasis added)); *see also Shank v. Vannoy*, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017) (Higginson, J., on denial of a certificate of appealability) ("Evidence that was available to be presented to the jury at the time of trial is not now 'new' evidence, even if it was not actually presented to the jury.").

Regardless, the evidence on which Smith relies in no way established that Smith did not commit this crime.  Instead, at most, it might have given rise to reasonable doubt in the minds of some jurors.  But that is not enough.  "The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."  *Schlup*, 513 U.S. at 329; *accord Bosely v. Cain*, 409 F.3d 657, 665 (5th Cir. 2005) ("At best, [petitioner]'s new evidence shows that a reasonable doubt could have been found to exist; it fails, however, to satisfy his burden of showing that no reasonable juror would have found him guilty."); *Crayton v. Cain*, Civil Action No. 02-2162, 2013 WL 5305673, at *5 (E.D. La. Sept. 19, 2013) ("[A] petitioner does not make a colorable 'actual innocence' claim simply by showing that, in light of his new evidence, his guilt is questionable or that reasonable doubt is conceivable." (quotation marks omitted)).

For all of these reasons, Smith has failed to establish that he qualifies as "actually innocent" under *McQuiggin*.  As a result, the "actual innocence" exception does not aid him.

Smith's federal petition deemed filed on January 4, 2024, was not timely filed within the one-year AEDPA statute of limitations period which expired on May 14, 2018. There is no statutory tolling, equitable tolling, or other applicable exception that would excuse his untimely filing. Smith's petition was not timely filed and should be dismissed for that reason.

## V.    **Procedural Bar**

The State alternatively argues that, even if the court were to excuse Smith's untimely filing of the federal habeas petition in this case, dismissal of his petition without further review is supported for another reason. Specifically, the State argues that the claims raised in Smith's petition are unexhausted and technically procedurally defaulted.[62]

In actuality, the Louisiana Supreme Court imposed a procedural bar to his claims challenging the constitutionality of the habitual offender act. To the extent that this differs from the State's exhaustion defense, the court raises the issue of procedural bar *sua sponte*. Accordingly, **Smith is hereby specifically instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (finding that a federal district court may "raise a habeas petitioner's procedural default *sua sponte* and then apply that default as a bar to further litigation of petitioner's claim).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. *Cone v. Bell*, 556 U.S. 499, 465 (2009) (citing

---

[62] Rec. Doc. 16 at 7-9.

*Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Ramirez v. Stevens*, 641 F. App'x 312, 319 (5th Cir. 2016).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).

Procedural default does not bar federal court review of a federal claim in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (citing *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).   The federal habeas court looks to the last reasoned opinion of the state courts to determine whether denial of relief was on the merits or based on state law procedural grounds.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Smith raised his current claims in his September 2022 motion to take judicial notice.[63] Ultimately, the Louisiana Supreme Court denied relief finding that Smith had "previously exhausted his right to collateral review."[64]

While the Louisiana Supreme Court did not specifically cite to the state law that procedurally barred Smith's claims, the language it used has been found to "clearly rel[y] on Louisiana Code of Criminal Procedure article 930.4(E), which provides, '[a] successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted

---

[63] Rec. Doc. 17 at 1245, Motion for Court to Take Notice of Law Pursuant to C.E. Art. 202 (A), (B), and (E), Question for Court, 10/14/22 (signed 9/26/22).

[64] *Smith*, 373 So. 3d at 716 (citation omitted); Rec. Doc. 17-1 at 294, La. S. Ct. Order, No. 2023-KH-00533, 12/5/23.

from a prior application.' " *Reaux v. Cain*, Civ. Action No. 17-8690, 2019 WL 1326909, at *2 (E.D. La. Mar. 25, 2019), *appeal dismissed*, No. 19-30319, 2019 WL 5448597 (5th Cir. May 31, 2019)

As the United States Fifth Circuit Court of Appeal has recognized, Louisiana Code of Criminal Procedure article 930.4(E) constitutes an independent and adequate state-law procedural ground to support a procedural bar to review. *Ardison v. Cain*, 264 F.3d 1140, 2001 WL 822445, at *4-5 (5th Cir. 2001); *Besse v. Tanner*, Civ. Action No. 16-2992, 2017 WL 2936311, at *8 (E.D. La. July 7, 2017); *Bell v. Baton*, Civ. Action No. 11-0304, 2012 WL 5364239, at *3 (M.D. La. Sep. 24, 2012), *adopted*, 2012 WL 5364237, at *1 (M.D. La. Oct. 31, 2012) (concluding that Article 930.4(E) has been found to be an adequate, independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied upon this statute in finding claims to be technically exhausted but procedurally defaulted).

Because the last reasoned state-court decision rested expressly upon an independent and adequate state rule of procedural default, this court may not review Smith's habitual offender statute claims unless petitioner demonstrates cause for the default and actual prejudice or a fundamental miscarriage of justice. *Glover v. Cain*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos v. Scott*, 61 F.3d at 338-39 (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Smith has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere

fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.

In this case, Smith has not offered any cause for the default which would excuse the procedural bar imposed by the state court.  "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982)).

Because Smith has not satisfied the "cause and prejudice" test, this court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. A petitioner makes such a showing only if he establishes as a factual matter that he is "actually innocent" of the crime of conviction.  *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995)); *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 647, 648 (2012) (citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).

As already explained above in the discussion of timeliness, Smith has not made a colorable showing of actual innocence.[65]  Accordingly, not only is Smith's federal application untimely, but his underlying claims also fail in any event because they are procedurally defaulted.

## VI.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that LaShawn Smith's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

---

[65] The same "actual innocence" analysis applies regardless of whether the impediment at issue is a limitations problem or a traditional procedural bar.  *See McQuiggin*, 133 S. Ct. at 1928.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[66]

New Orleans, Louisiana, this  18th  day of June, 2024.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[66]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.